UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MICHELLE Y. COOKE,

                      Plaintiff,

-against-

BERKSHIRE FARM CENTER AND
SERVICES FOR YOUTH,

                      Defendant.
------------------------------------------------------X

**ORDER**
11-CV-2970 (SJF)(GRB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   FEB 29 2012   ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On June 21, 2011, plaintiff Michelle Y. Cooke ("plaintiff") commenced this action, alleging violations of the Americans with Disabilities Act ("ADA"), Family Medical Leave Act ("FMLA"), Pregnancy Discrimination Act, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") by her former employer. [Docket Entry No. 1].

Before the Court is defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). [Docket Entry No. 4]. For the reasons that follow, defendant's motion is denied in part and granted in part.

I.     Background[1]

Plaintiff is a licensed clinical social worker and mental health counselor. Compl. at ¶¶

---

[1] For purposes of this motion to dismiss, the factual allegations in plaintiff's complaint are taken as true. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

1

10-11. Defendant Berkshire Farm Center and Services for Youth ("Berkshire" or "defendant") is a not-for-profit corporation with offices in and around New York State. Id. at ¶ 2. In the complaint, plaintiff alleges that she was employed by Berkshire from October 1996 through November 17, 2006[2] in the positions of Family Specialist, Community Service Worker, New York City District Supervisor, New York City Regional Director, Regional Director, and District Supervisor of Long Island. Id. at ¶¶ 9, 13. During her time with Berkshire, plaintiff received "numerous commendations and awards for excellent work," and was named "Outstanding Employee of the Year Southern Region." Id. at ¶ 12.

Plaintiff alleges that, while working in the positions of Regional Director and District Supervisor of Long Island, she was "harass[ed]" and "mistreat[ed]" by Berkshire's CEO. Id. at ¶ 14. The CEO's "verbal abuse," which consisted of "cursing and threats," began in May 2006 and "continu[ed] past" October 2006. Id. at ¶¶ 15-16. As a result of the alleged abuse, plaintiff suffered from "tremendous stress." Id. at ¶ 15. Specifically, plaintiff alleges: (1) that during a May 4, 2006 meeting, the CEO shouted at her and threatened to fire her; (2) that the CEO "continually" referred to her and another female employee as "bitches" in front of other staff members; and (3) that her employment was terminated in November 2006 when complications related to her pregnancy prevented her from working. Id. at ¶¶ 17-79.

On October 1, 2006, plaintiff experienced "great pain in the stomach" and bleeding, and informed her supervisor, Andrew Walker ("Walker"), that she would not be able to complete the

---

[2] Although paragraph nine (9) of the complaint alleges that plaintiff's employment was terminated on November 17, 2007, the Court assumes this to be a typographical error, as the remainder of the complaint indicates that plaintiff's employment was terminated on November 17, 2006. See, e.g., Compl. at ¶¶ 64, 77.

work day. Id. at ¶¶ 22-24. On October 4, 2006, plaintiff informed Walker that she was pregnant, and that her physician had advised against returning to work for fourteen (14) days due to her "medical condition." Id. at ¶¶ 21, 29. Although plaintiff received a letter from the company's human resources department "advising [her] to complete forms for FLMA [sic] and disability," she was subsequently advised by the human resources department that she "did not qualify" for FMLA benefits. Id. at ¶¶ 32-33. Plaintiff was "surprised" by this advice because, among other things, "the employee handbook indicated that FMLA leaves were available." Id. at ¶¶ 34-35.

On October 20, 2006, plaintiff's physician advised Berkshire that plaintiff's pregnancy was "high risk," that she was suffering from "continuous uterine contractions with bleeding," and that she "needed to continue to be absent from work." Id. at ¶ 39. Plaintiff's physician advised Berkshire that plaintiff would be re-evaluated on October 31, 2006. Id. On November 1, 2006, plaintiff requested to use additional sick time in order to extend her absence. Id. at ¶ 41. She also requested that she be permitted to work from home. Id. at ¶ 42.

In a letter dated November 2, 2006, Berkshire's CEO advised plaintiff that "because [she] was unable to return to work at that time, upon [her] return, [she] would be demoted to the position of Therapeutic Foster Care Family Specialist with . . . [a] substantial reduction in salary." Id. at ¶ 48. Plaintiff called her supervisor and stated that she believed she was being treated unfairly. Id. at ¶ 50. On November 3, 2006, a human resources employee informed plaintiff that, pursuant to the direction of the CEO, plaintiff "would have to return to work immediately without any restriction and that if [she] did not return immediately, [she] would lose the position of a Therapeutic Foster Care Family Specialist as well." Id. at ¶ 53. Although plaintiff "had more than 700 hours of vacation time to use, 700 hours of sick time and 24 hours

3

of personal time," she was not permitted to use that time in connection with the complications she was experiencing. Id. at ¶¶ 50, 55-56, 66. Plaintiff states that she "knew that other employees were allowed to use sick leave and vacation time to cover illnesses that resulted in months away from their jobs and were not terminated." Id. at ¶ 72. On December 1, 2006, plaintiff received a letter stating that her employment had been terminated on November 17, 2006. Id. at ¶ 64.

Plaintiff asserts the following claims against Berkshire: (1) violations of the Americans with Disabilities Act; (2) violations of the Family Medical Leave Act; (3) gender discrimination in violation of Title VII; and (4) violations of the Pregnancy Discrimination Act of 1978.

Defendant has moved to dismiss the complaint in its entirety for insufficient service of process, and moved separately to dismiss counts one and two of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

II. Analysis

    A. Motion to Dismiss Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949

4

(quoting Twombly, 550 U.S. at 557).

In deciding a motion pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. "While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." Matson, 631 F.3d at 63 (internal quotation marks and citation omitted).

B. Service of Process.

First, defendant claims that the complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) due to improper service of process. Defendant's Memorandum of Law [Docket Entry No. 4-2] ("Def. Br.") at 3-5; Defendant's Reply Memorandum [Docket Entry No. 8] at 1-3. Defendant argues that plaintiff's initial attempt at service by U.S. mail was insufficient, see Fed. R. Civ. P. 4(h)(1), and that plaintiff's subsequent attempt to cure the defect is not adequately supported by evidence.

"[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010) (quoting Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005)). "In deciding a motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5), a court may consider all pertinent documents submitted by the parties." Marte v. N.Y. City Police Dept., No. 10 Civ. 3706, 2010 WL 4176696, at *4 (S.D.N.Y. Oct. 12, 2010) (citing Boehner v. Heise, 410 F.Supp.2d 228, 231 n. 1 (S.D.N.Y. 2006)).

The complaint in this action was filed on June 21, 2011. [Docket Entry No. 1]. Accordingly, pursuant to Federal Rule of Civil Procedure 4(m), plaintiff's deadline to serve defendant was October 19, 2011. On June 21, 2011, plaintiff "served" the complaint by only mailing a copy to the defendant by "United States Postal Service Express Mail." [See Docket Entry No. 2]. This attempt at service was insufficient. See Fed. R. Civ. P. 4; see also Fairman v. Hurley, 373 F.Supp.2d 227, 232 (W.D.N.Y. 2005) ("Neither the Federal Rules nor New York's CPLR permit service of a summons and complaint by simply mailing a copy to a defendant via the U.S. Postal Service or an express delivery service."). The question of whether or not defendant actually received this mailing is irrelevant. See Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service . . . .").

However, plaintiff subsequently cured this defect by serving an authorized agent in the Office of the Secretary of State on July 25, 2011, and has filed an affidavit of such service. See Fed. R. Civ. P. 4(e)(1); C.P.L.R. 311(a)(1); N.Y. Not-for-Profit Corp. Law § 306(a)-(b); [Docket Entry No. 9-1]. The Court is satisfied plaintiff's second attempt at service of process was proper.

6

Therefore, defendant's motion is denied insofar as it seeks dismissal of the action pursuant to Rules 12(b)(5) and 12(b)(2).

C.  Family Medical Leave Act Claim.

Defendant argues that plaintiff's FMLA claim must be dismissed because the statute of limitations to bring such a claim has expired. Def. Br. at 5-6. The Court agrees.

"To be timely, suits under the FMLA must be filed within two years of the last occurrence constituting an alleged violation of the act, unless the violation was 'willful,' in which case the limitations period is extended to three years." Higgins v. NYP Holdings, Inc., --- F.Supp.2d ----, 2011 WL 6083702, at *7 (S.D.N.Y. Dec. 7, 2011) (citing 29 U.S.C. § 2617(c)(1)-(2)). In this case, the last event constituting an alleged violation of the act was plaintiff's termination, which occurred on November 17, 2006. Compl. at ¶ 64. Thus, even assuming that plaintiff adequately alleged a "willful violation" of the FMLA, the deadline to file her claim was November 17, 2009. Nevertheless, plaintiff did not file this action until June 21, 2011, more than one (1) year after the statute of limitations had expired.

Plaintiff appears to concede this fact, but argues that defendant is barred from asserting a statute of limitations defense because it previously misrepresented plaintiff's eligibility for FMLA benefits. Plaintiff's Brief in Opposition [Docket Entry No. 5] ("Opp.") at 8 (citing Compl. at ¶ 33). The Court sees no basis for applying the "doctrine of unclean hands" in this situation. Nor is plaintiff entitled to equitable tolling of the statute of limitations. "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or

deception to refrain from filing a timely action.'" Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quoting Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 794, 793 N.Y.S.2d 565 (3d Dep't 2005)). These remedies are reserved for actions "involving serious misconduct by the defendant." See Keitt v. City of N.Y., 09 Civ. 5663, 2010 WL 3466175, at *9 n. 14 (S.D.N.Y. Aug. 9, 2010). At most, the complaint alleges that a human resources representative told plaintiff in October 2006 that she "did not qualify" for FMLA benefits. Compl. at ¶ 33. Even if this advice was incorrect, plaintiff does not allege that defendant wrongfully misled her in order to conceal the existence of a cause of action, see id., or that she was somehow prevented from exercising due diligence to identify her potential FMLA claim. The second cause of action is therefore dismissed.

    D.    Americans with Disabilities Act Claim.

"In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)). Defendant moves to dismiss this claim, arguing that plaintiff has not alleged that she was "disabled" within the meaning of the ADA. Def. Br. at 6-8.

Under the version of the ADA in effect at the time of plaintiff's termination, a disability was defined as: "(A) a physical or mental impairment that substantially limits one or more of the

major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005) (quoting 42 U.S.C. § 12102(2) (1991), superseded by 42 U.S.C. § 12102(3) (2009)).[3] The Court agrees that plaintiff's ADA claim fails because she has not adequately alleged that she suffered from a "disability" under the statute.

Pregnancy itself does not constitute a "disability" under the ADA. See Dantuono v. Davis Vision, Inc., No. 07-CV-2234, 2009 WL 5196151, at *4 (E.D.N.Y. Dec. 29, 2009) (citing cases). Although complications from pregnancy may qualify as a disability in "extremely rare circumstances," Minott v. Port Authority of N.Y. & N.J., 116 F.Supp.2d 513, 525 (S.D.N.Y. 2000), courts have "generally" held that such complications do not create a disability for purposes of the ADA, Conley v. United Parcel Svc., 88 F.Supp.2d 16, 19 (E.D.N.Y. 2000) (citing cases). "[I]n this type of case, it is the physiological impairment that results from the complications that renders the person disabled." Id. at 20 (citing Bond v. Sterling, Inc., 997 F. Supp. 306, 310 (N.D.N.Y. 1998)). "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." Kennebrew v. N.Y. City Housing Auth., No. 01 CIV 1654, 2002 WL 265120, at *18 n. 32 (S.D.N.Y. Feb. 26, 2002);

---

[3] The ADA Amendments Act of 2008 ("ADAAA") "expanded the class of individuals entitled to protection under the ADA." Kantrowitz v. Uniondale Free School Dist., --- F.Supp.2d ----, 2011 WL 4593147, at *18 n. 10 (E.D.N.Y. Sept. 30, 2011). However, "every court that has addressed th[e] issue . . . has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date." Moran v. Premier Educ. Group, LP, 599 F.Supp.2d 263, 271-72 (D. Conn. 2009). Therefore, the Court applies the version of the ADA that was in effect at the time of the underlying events at issue. Ragusa v. Malverne Union Free School Dist., 381 Fed. Appx. 85, 87 n. 2 (2d Cir. 2010) ("[W]e here apply the version of the statute in effect during the time period at issue, which ended with [plaintiff's] termination on June 30, 2005."); see also Price v. Mount Sinai Hosp., No. 10-5232-cv, 2012 WL 313577, at *1 (2d Cir. Feb. 2, 2012).

see also Leahy v. Gap, Inc., No. 07-CV-2008, 2008 WL 2946007, at *4 (E.D.N.Y. July 29, 2008) ("For purposes of the ADA, short term, temporary restrictions are not 'substantially limiting' and do not render a person 'disabled.'"); Green v. N.Y. City Health & Hosp. Corp., No. 04-CV-5144, 2008 WL 144828, at *4 (S.D.N.Y. Jan. 15, 2008) ("To establish a disability under the ADA, there must be some proof of permanency.").

Plaintiff alleges that she was disabled by a "high risk pregnancy" and related complications, which included "[u]terine [f]ibroids," "continuous uterine contractions," pain, and bleeding. Id. at ¶¶ 23, 39, 61. Although plaintiff claims that her physician directed her to take leave from work due to the "high risk" nature of the pregnancy, she does not allege that she suffered from a physiological impairment sufficient to render her "disabled," and does not allege that her conditions had any long-term or permanent impact. See Leahy, 2008 WL 2946007, at *5 (plaintiff's "claimed limitations were the result of her pregnancy and therefore as temporary as the pregnancy itself"). Thus, this is not one of the "extremely rare" cases in which pregnancy-related complications rise to the level of "disability" under the ADA.

Plaintiff's application for leave to amend her complaint, Opp. at 7-8, is denied without prejudice because she has failed to file a proposed amended complaint or to set forth the basis of her proposed amendment.

E.    Remaining Claims.

Defendant has not moved to dismiss the third or fourth claims of the complaint, which allege discrimination on the basis of plaintiff's gender and pregnancy. Accordingly, those claims will proceed.

III. Conclusion

For the foregoing reasons, defendant's motion to dismiss claims one and two of the complaint [Docket Entry No. 4] is granted. The motion to dismiss is denied in all other respects. **A conference before the undersigned is scheduled for Thursday, March 15, 2012 at 11:15 a.m.**

**SO ORDERED.**

                                        s/ Sandra J. Feuerstein
                                        _____
                                        Sandra J. Feuerstein
                                        United States District Judge

Dated:        February 29, 2012
               Central Islip, New York